UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------
MARK V.,

                         Plaintiff,          <u>DECISION AND ORDER</u>
                                             1:21-cv-10123-GRJ

          v.

COMMISSIONER OF SOCIAL SECURITY,

                         Defendant.
-------------------------------------------------------
GARY R. JONES, United States Magistrate Judge:

       In July of 2019, Plaintiff Mark V.[1] applied for Disability Insurance

Benefits under the Social Security Act. The Commissioner of Social

Security denied the application.  Plaintiff, represented by the Law Office of

Charles E. Binder and Harry J. Binder, LLP, Charles E. Binder, Esq., of

counsel, commenced this action seeking judicial review of the

Commissioner's denial of benefits under 42 U.S.C. §§ 405 (g) and 1383

(c)(3).  The parties consented to the jurisdiction of a United States

Magistrate Judge. (Docket No. 17).

       This case was referred to the undersigned on October 25, 2022.  The

parties, through counsel, submitted a Joint Stipulation in lieu of motions for

---

[1] Plaintiff's name has been partially redacted in compliance with Federal Rule of Civil Procedure 5.2 (c)(2)(B) and the recommendation of the Committee on Court Administration and Case Management of the Judicial Conference of the United States.

judgment on the pleadings. (Docket No. 16). For the following reasons,

Plaintiff is granted judgment on the pleadings and this matter is remanded

for calculation of benefits.

## I.  BACKGROUND

### A.    *Administrative Proceedings*

Plaintiff applied for benefits on July 31, 2019, alleging disability

beginning June 1, 2018. (T at 87, 180-81).[2]  Plaintiff's application was

denied initially and on reconsideration.  He requested a hearing before an

Administrative Law Judge ("ALJ").  A hearing was held on October 30,

2020, before ALJ Sharda Singh. (T at 36-78). Plaintiff appeared with an

attorney and testified. (T at 42-69). The ALJ also received testimony from

Larry Takki, a vocational expert. (T at 70-76).

### B.    *ALJ's Decision*

On December 18, 2020, the ALJ issued a decision denying the

application for benefits. (T at 10-35).  The ALJ found that Plaintiff had not

engaged in substantial gainful activity since June 1, 2018 (the alleged

onset date) and met the insured status requirements of the Social Security

Act through December 31, 2024 (the date last insured). (T at 15-16).

---

[2] Citations to "T" refer to the administrative record transcript at Docket No. 9.

The ALJ concluded that Plaintiff's osteoarthritis of both knees (status post total knee replacement of right knee), degenerative joint disease of both hands, inflammatory arthritis, chronic sinusitis, obstructive sleep apnea, (OSA), carpal tunnel syndrome (CTS), and obesity were severe impairments as defined under the Act. (T at 16).

However, the ALJ found that Plaintiff did not have an impairment or combination of impairments that met or medically equaled one of the listed impairments in 20 CFR Part 403, Subpart P, Appendix 1. (T at 17).

The ALJ determined that Plaintiff retained the residual functional capacity ("RFC") to perform sedentary work, as defined in 20 CFR 404.1567 (a), with the following limitations: he would require a sit and stand option after 20-30 minutes to stand for 1-2 minutes and then sit back down; he can never climb ladders, ropes, or scaffolds; he can occasionally climb ramps or stairs, balance, stoop, kneel, crouch and crawl, but should avoid moving machinery; and he can perform frequent reaching, handling, and fingering. (T at 18).

The ALJ concluded that Plaintiff could not perform his past relevant work as a firefighter or police officer. (T at 28).  Considering, however, Plaintiff's age (43 on the alleged onset date), education (at least high school), work experience, and RFC, the ALJ determined that there are jobs

that exist in significant numbers in the national economy that Plaintiff can perform. (T at 29-31).

As such, the ALJ found that Plaintiff had not been under a disability, as defined under the Social Security Act, and was not entitled to benefits for the period between June 1, 2018 (the alleged onset date) and December 18, 2020 (the date of the ALJ's decision). (T at 31).

On October 26, 2021, the Appeals Council denied Plaintiff's request for review, making the ALJ's decision the Commissioner's final decision. (T at 1-6).

## C.    Procedural History

Plaintiff commenced this action, by and through his counsel, by filing a Complaint on November 29, 2021. (Docket No. 1).  On August 3, 2022, the parties, through counsel, filed a Joint Stipulation in lieu of motions for judgment on the pleadings. (Docket No. 16).

## II.  APPLICABLE LAW

## A.    Standard of Review

"It is not the function of a reviewing court to decide de novo whether a claimant was disabled."  *Melville v. Apfel*, 198 F.3d 45, 52 (2d Cir. 1999). The court's review is limited to "determin[ing] whether there is substantial evidence supporting the Commissioner's decision and whether the

Commissioner applied the correct legal standard." *Poupore v. Astrue*, 566 F.3d 303, 305 (2d Cir. 2009) (per curiam).

The reviewing court defers to the Commissioner's factual findings, which are considered conclusive if supported by substantial evidence. *See* 42 U.S.C. § 405(g). "Substantial evidence" is "more than a mere scintilla" and "means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Lamay v. Commissioner of Soc. Sec.*, 562 F.3d 503, 507 (2d Cir. 2009) (internal quotations omitted) (quoting *Richardson v. Perales*, 402 U.S. 389, 401 (1971)).

"In determining whether the agency's findings are supported by substantial evidence, the reviewing court is required to examine the entire record, including contradictory evidence and evidence from which conflicting inferences can be drawn." *Talavera v. Astrue*, 697 F.3d 145, 151 (2d Cir. 2012) (internal quotations omitted).

"When there are gaps in the administrative record or the ALJ has applied an improper legal standard," or when the ALJ's rationale is unclear, remand "for further development of the evidence" or for an explanation of the ALJ's reasoning is warranted. *Pratts v. Chater*, 94 F.3d 34, 39 (2d Cir. 1996).

B.    *Five-Step Sequential Evaluation Process*

Under the Social Security Act, a claimant is disabled if he or she lacks the ability "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months ...."  42 U.S.C. § 423(d)(1)(A).

A claimant's eligibility for disability benefits is evaluated pursuant to a five-step sequential analysis:

> 1. The Commissioner considers whether the claimant is currently engaged in substantial gainful activity.
>
> 2. If not, the Commissioner considers whether the claimant has a "severe impairment" which limits his or her mental or physical ability to do basic work activities.
>
> 3. If the claimant has a "severe impairment," the Commissioner must ask whether, based solely on medical evidence, claimant has an impairment listed in Appendix 1 of the regulations. If the claimant has one of these enumerated impairments, the Commissioner will automatically consider him disabled, without considering vocational factors such as age, education, and work experience.
>
> 4. If the impairment is not "listed" in the regulations, the Commissioner then asks whether, despite the claimant's severe impairment, he or she has residual functional capacity to perform his or her past work.

5. If the claimant is unable to perform his or her past work, the Commissioner then determines whether there is other work which the claimant could perform.

*See Rolon v. Commissioner of Soc. Sec.*, 994 F. Supp. 2d 496, 503

(S.D.N.Y. 2014); *see also* 20 C.F.R. §§ 404.1520(a)(4)(i)–(v),

416.920(a)(4)(i)–(v).

The claimant bears the burden of proof as to the first four steps; the

burden shifts to the Commissioner at step five. *See Green-Younger v.*

*Barnhart*, 335 F.3d 99, 106 (2d Cir. 2003). At step five, the Commissioner

determines whether claimant can perform work that exists in significant

numbers in the national economy. *See Butts v. Barnhart*, 416 F.3d 101,

103 (2d Cir. 2005); 20 C.F.R. § 404.1560(c)(2).

## III.  DISCUSSION

Plaintiff raises two main arguments in support of his request for

reversal of the ALJ's decision.  First, Plaintiff argues that the ALJ's

assessment of the medical opinion evidence was flawed. Second, he

challenges the ALJ's credibility determination.  This Court will address both

arguments in turn.

### A.    Medical Opinion Evidence

"Regardless of its source, the ALJ must evaluate every medical

opinion in determining whether a claimant is disabled under the [Social

Security] Act." *Pena ex rel. E.R. v. Astrue*, No. 11-CV-1787 (KAM), 2013 WL 1210932, at *14 (E.D.N.Y. Mar. 25, 2013) (citing 20 C.F.R. §§ 404.1527(c), 416.927(d) (2020)) (internal quotation marks omitted).

In January of 2017, the Social Security Administration promulgated new regulations regarding the consideration of medical opinion evidence. The revised regulations apply to claims filed on or after March 27, 2017. *See* 20 C.F.R. § 404.1520c.  Because Plaintiff's application for benefits was filed after that date, the new regulations apply here.

The ALJ no longer gives "specific evidentiary weight to medical opinions," but rather considers all medical opinions and "evaluate[s] their persuasiveness" based on supportability, consistency, relationship with the claimant, specialization, and other factors. See 20 C.F.R. § 404.1520c (a), (b)(2).   The ALJ is required to "articulate how [he or she] considered the medical opinions" and state "how persuasive" he or she finds each opinion, with a specific explanation provided as to the consistency and supportability factors. See 20 C.F.R. § 404.1520c (b)(2).

Consistency is "the extent to which an opinion or finding is consistent with evidence from other medical sources and non-medical sources." *Dany Z. v. Saul*, 531 F. Supp. 3d 871, 882 (D. Vt. 2021)(citing 20 C.F.R. § 416.920c(c)(2)).  The "more consistent a medical opinion" is with "evidence

from other medical sources and nonmedical sources," the "more persuasive the medical opinion" will be. See 20 C.F.R. § 404.1520c(c)(2).

Supportability is "the extent to which an opinion or finding is supported by relevant objective medical evidence and the medical source's supporting explanations." *Dany Z*, 531 F. Supp. 3d at 881. "The more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) or prior administrative medical finding(s), the more persuasive the medical opinions or prior administrative medical finding(s) will be." 20 C.F.R. § 404.1520 (c)(1), 416.920c(c)(1).

This Court will summarize the medical opinions of record and then consider the ALJ's analysis thereof.

### 1. Dr. Bostrom

Dr. Mathias Bostrom, Plaintiff's treating orthopedic surgeon, completed a "lower extremities impairment questionnaire" in July of 2019. He diagnosed post-traumatic osteoarthritis of the right knee, history of arthroscopy of the right knee, chronic pain of the right knee, status post total right knee replacement, and primary osteoarthritis of the left knee. (T at 355).

Dr. Bostrom identified limited range of motion, tenderness, swelling, joint deformity, and joint warmth in Plaintiff's right knee, along with muscle weakness in the right leg and trigger points in the right knee, as clinical findings underlying his assessment. (T at 355-56).

Dr. Bostrom opined that Plaintiff could not sit, stand, or walk for more than one hour during the course of an 8-hour workday. (T at 358).  He found that Plaintiff would need to elevate his legs to chest-level or higher after sitting for 20 minutes. (T at 358).  He opined that Plaintiff would need to get up from a seated position to move around every hour. (T at 359).

Dr. Bostrom opined that Plaintiff's symptoms would likely increase if he was placed in a competitive work environment. (T at 359). He reported that Plaintiff's experience of pain, fatigue, or other symptoms would be severe enough to frequently interfere with his attention and concentration. (T at 359).  He concluded that Plaintiff would need to take unscheduled breaks to rest at unpredictable intervals during an 8-hour workday. (T at 359). Dr. Bostrom opined that Plaintiff was not a malingerer and would experience "good" days and "bad" days. (T at 360-61).

Dr. Bostrom completed a second questionnaire on the same date, which contained substantially the same findings. (T at 350-54).

2.    *Dr. Reyes*

Dr. Luz Reyes performed a consultative examination in November of 2019.  Dr. Reyes diagnosed chronic right knee pain (status post right full knee replacement), left knee pain, rheumatoid arthritis, chronic sinusitis, and seasonal allergies. (T at 388-89).

Dr. Reyes characterized Plaintiff's prognosis as "fair" and assessed moderate difficulty with standing, walking, and climbing. (T at 389). Dr. Reyes recommended that Plaintiff avoid respiratory irritants. (T at 389).

3.    *Non-Examining State Agency Review Consultants*

Dr. A. Saeed reviewed Plaintiff's records in November of 2019.  Dr. Saeed opined that Plaintiff could sit for 6 hours and stand/walk for 2 hours in an 8-hour workday; perform occasional kneeling, crouching, and crawling; and occasionally lift 10 pounds, (T at 82-84).  Dr. R. Uppal, another State Agency review physician, affirmed these findings in February of 2020. (T at 93-95).

4.    *ALJ's Analysis*

The ALJ found Dr. Bostrom's opinion "somewhat persuasive." (T at 25).  In particular, the ALJ credited the physician's conclusion that Plaintiff would need a sit/stand option during the course of a normal workday. (T at 25).  The ALJ, however, did not accept Dr. Bostrom's assessment that

Plaintiff would need to elevate his legs for extended periods several times a day or his opinion that Plaintiff would need to take unscheduled breaks during the course of the workday. (T at 25).

The Court finds the ALJ's assessment of Dr. Bostrom's opinion flawed for several reasons.

First, the ALJ failed to address two critical aspects of the treating physician's opinion.  Dr. Bostrom opined that Plaintiff could not sit for more than one hour during the course of an 8-hour workday. (T at 358).  In addition, he found that Plaintiff's experience of pain, fatigue, or other symptoms would be severe enough to frequently interfere with his attention and concentration. (T at 359).

The ALJ did not explain how he reconciled his RFC determination (which did not include limitations related to sustained concentration or prolonged sitting, other than the sit/stand option) with these aspects of the treating physician's opinion.

"[T]he crucial factors in any determination must be set forth with sufficient specificity to enable [the reviewing court] to decide whether the determination is supported by substantial evidence." *Ferraris v. Heckler*, 728 F.2d 582, 587 (2d Cir. 1984).  Remand is required where the ALJ failed to provide an "adequate 'roadmap' for his reasoning." *Almodovar v.*

*Berryhill*, No. 17-CV-8902 (BCM), 2019 U.S. Dist. LEXIS 48612, at *18 (S.D.N.Y. Mar. 22, 2019).

Second, the ALJ did not cite evidence sufficient to override the treating physician's assessment of Plaintiff's need to take unscheduled breaks and elevate his legs.  Dr. Bronson supported his opinion with specific reference to objective clinical findings, including limited range of motion, tenderness, swelling, joint deformity, and joint warmth in Plaintiff's right knee, along with muscle weakness in the right leg and trigger points in the right knee. (T at 355-56).

The ALJ referenced instances in which Plaintiff was observed to ambulate without assistance during medical visits, denied pain, and engaged in physical activities, including household chores and travel. (T at 25).  Dr. Bronson's opinion, however, is not undermined because there was some evidence that Plaintiff's symptoms waxed and waned.  Indeed, Dr. Bronson recognized this by noting that Plaintiff would have "good" and "bad" days and cautioned that Plaintiff's symptoms would likely increase if he was placed in a competitive work environment. (T at 359, 361).

Moreover, notwithstanding the references cited by the ALJ, significant symptoms and limitations are well-documented in the record—including right knee crepitus, bilateral paraspinal muscle tenderness in the thoracic

spine, limited range of motion in the right hip, swelling, tenderness, hypersensitivity, and limited range of motion in the right knee (T at 280, 365, 409, 414, 416-17). *See Nunez v. Kijakazi*, No. 1:20-CV-05907, 2022 WL 2872666, at *2 (E.D.N.Y. July 21, 2022)("The ALJ can neither substitute her own opinion for the experts, nor cherry-pick the facts to support her conclusion.")(citing *Rosa v. Callahan*, 168 F.3d 72, 79 (2d Cir. 1999)).

Third, the ALJ placed undue reliance on the opinions of the consultative examiner and State Agency review physicians.  (T at 26-28).

The opinion of Dr. Reyes (the consultative examiner) is based on a single examination, contains no analysis of Plaintiff's ability to sit for prolonged periods or the impact of pain on his ability to concentrate, and offers a vague assessment of "moderate" limitation with standing, walking, and climbing. (T at 389).

In contrast, Dr. Bronson's opinion is detailed, supported by specific clinical findings, and based on an extended treatment history.

"As the amended regulations note, '[a] medical source may have a better understanding of your impairment(s) if he or she examines you than if the medical source only reviews evidence in your folder.'" *Id*. (quoting 20 C.F.R. §§ 404.1520c(c)(3)(v), 416.920c(c)(3)(v))); *see also Cuevas v.*

*Comm'r of Soc. Sec*., No. 20-CV-0502 (AJN) (KHP), 2021 U.S. Dist. LEXIS 19212, at *25-26 (S.D.N.Y. Jan. 29, 2021)("A survey of … cases … show[s] that while the treating physician's rule was modified, the essence of the rule remains the same, and the factors to be considered in weighing the various medical opinions in a given claimant's medical history are substantially similar.")(collecting cases).

"Even though ALJs are no longer directed to afford controlling weight to treating source opinions—no matter how well supported and consistent with the record they may be—the regulations still recognize the 'foundational nature' of the observations of treating sources, and 'consistency with those observations is a factor in determining the value of any [treating source's] opinion.'" *Shawn H. v. Comm'r of Soc. Sec*., No. 2:19-CV-113, 2020 WL 3969879, at *6 (D. Vt. July 14, 2020)(quoting *Barrett v. Berryhill*, 906 F.3d 340, 343 (5th Cir. 2018)).

And notably, Dr. Bronson is a Board-certified orthopedic surgeon, while Dr. Reyes is board-certified in pediatrics. (T at 389). *See* 20 C.F.R. § 404.1520c ("The … opinion … of a medical source who has received advanced education and training to become a specialist may be more persuasive about medical issues related to his or her area of specialty than the … opinion … of a medical source who is not a specialist in the relevant

area of specialty.); *see also Nicole V. v. Comm'r of Soc. Sec.*, No. 1:20-CV-01099-TPK, 2022 WL 1134485, at *4 (W.D.N.Y. Apr. 18, 2022)(noting that the ALJ must "seriously consider … the specialization of the source").

Similar considerations apply to the ALJ's decision to grant persuasive weight to the non-examining State Agency review physicians' opinions. (T at 27-28).

Their opinions are not as well documented as Dr. Bronson's opinion and differ significantly because neither of the State Agency review physicians examined Plaintiff. Moreover, Dr. Saeed is a pediatrician, and Dr. Uppal is an internist as compared to Dr. Bronson, who is a Board Certified orthopedic sugeon. *See Dany Z. v. Saul*, 531 F. Supp. 3d 871, 885 (D. Vt. 2021)("The new regulations cannot be read as a blank check giving ALJs permission to rely solely on agency consultants while dismissing treating physicians in a conclusory manner.").

In sum, and for the reasons discussed above, the Court concludes that the ALJ's assessment of the treating physician's opinion is not supported by substantial evidence or consistent with applicable law.

### B.   Credibility

A claimant's subjective complaints of pain and limitation are "an important element in the adjudication of [social security] claims, and must

be thoroughly considered in calculating the [RFC] of a claimant." *Meadors v. Astrue*, 370 F. App'x 179, 183 (2d Cir. 2010) (citation omitted); *see also* 20 C.F.R. § 416.929.

However, "the ALJ is … not required to accept the claimant's subjective complaints without question." *Genier v. Astrue*, 606 F.3d 46, 49 (2d Cir. 2010) (citations omitted). Rather, the ALJ "may exercise discretion in weighing the credibility of the claimant's testimony in light of other evidence in the record." *Id*. (citation omitted); *see also Henningsen v. Comm'r of Soc. Sec*., 111 F. Supp. 3d 250, 267 (E.D.N.Y. 2015) ("The ALJ retains discretion to assess the credibility of a claimant's testimony regarding disabling pain and 'to arrive at an independent judgment, in light of medical findings and other evidence, regarding the true extent of the pain alleged by the claimant.'" (quoting *Marcus v. Califano*, 615 F.2d 23, 27 (2d Cir. 1979))).

The ALJ follows a two-step process in evaluating a claimant's credibility.  First, "the ALJ must decide whether the claimant suffers from a medically determinable impairment that could reasonably be expected to produce the symptoms alleged." *Genier*, 606 F.3d at 49 (citation omitted).

Second, "the ALJ must consider the extent to which the claimant's symptoms can reasonably be accepted as consistent with the objective

medical evidence and other evidence of record." *Id*. (citation, alterations, and quotation marks omitted). The ALJ must "consider all of the available medical evidence, including a claimant's statements, treating physician's reports, and other medical professional reports." *Fontanarosa v. Colvin*, No. 13-CV-3285, 2014 U.S. Dist. LEXIS 121156, at *36 (E.D.N.Y. Aug. 28, 2014) (citing *Whipple v. Astrue*, 479 F. App'x 367, 370-71 (2d Cir. 2012)).

If the claimant's allegations of pain and limitation are "not substantiated by the objective medical evidence, the ALJ must engage in a credibility inquiry." *Meadors*, 370 F. App'x at 184.

This inquiry involves seven (7) factors: (1) the claimant's daily activities; (2) the location, duration, frequency, and intensity of the pain; (3) precipitating and aggravating factors; (4) the type, dosage, effectiveness, and side effects of any medications taken to alleviate the pain; (5) any treatment, other than medication, that the claimant has received; (6) any other measures that the claimant employs to relieve the pain; and (7) other factors concerning the claimant's functional limitations and restrictions as a result of the pain. *See* 20 C.F.R. § 404.1529(c)(3)(i)-(vii)).

If the ALJ discounts the claimant's credibility, the ALJ "must explain the decision to reject a claimant's testimony "with sufficient specificity to enable the [reviewing] Court to decide whether there are legitimate reasons

for the ALJ's disbelief and whether [the ALJ's] decision is supported by substantial evidence." *Calzada v. Astrue*, 753 F. Supp. 2d 250, 280 (S.D.N.Y. 2010)(alterations in original, citations omitted).

In the present case, Plaintiff testified as follows. He has severe knee pain daily.  (T at 46).  He can engage in activities for limited periods, but then needs to elevate his legs and generally spends the rest of the day in bed. (T at 46).  His pain persists even after right knee replacement surgery. (T at 47).  Prolonged sitting aggravates his pain. (T at 48, 50-51).  Activities are undertaken during short spans of time due to pain. (T at 52).  Plaintiff estimated that he spends 30-40% of each day in bed. (T at 53-54).

He can carry 10-15 pounds. (T at 55).  He would find it difficult to concentrate over the course of workday due to pain. (T at 57-58).  His wife and parents assist with caring for his young children and household chores. (T at 58).  He can travel short distances, but avoids long trips. (T at 58-59). Plaintiff feels depressed by his condition. (T at 62). Climbing stairs is difficult. (T at 67).  He performs some shopping, household chores, and other activities, but limits them to short periods due to pain. (T at 67-68).

The ALJ found that Plaintiff's medically determinable impairments could reasonably be expected to cause the alleged symptoms, but

concluded that his statements concerning the intensity, persistence, and limiting effects of those symptoms were not fully credible. (T at 20).

For the following reasons, the Court also finds the ALJ's decision to discount Plaintiff's credibility flawed.

First, the ALJ found Plaintiff's complaints of disabling pain and limitation not fully consistent with the objective evidence.  (T at 20).

Plaintiff's subjective testimony, however, is fully consistent with the assessment of his treating orthopedic surgeon.  The ALJ's failure to properly analyze that opinion undermines the decision to discount Plaintiff's credibility.

Second, the ALJ found Plaintiff's activities of daily living "including caring for his children, driving, and household chores," along with "extensive physical work around his house" and "travelling out of state," inconsistent with his claims of disabling pain and limitation. (T at 28).

The problem with the ALJ's analysis is that the ALJ did not adequately address the context in which Plaintiff performed those activities—i.e., for very limited durations and often with the assistance of others—and the frequent consequences of such activities—i.e., significant pain and swelling resulting in the need to lay down in bed for extended periods.  Moreover, as discussed above, Dr. Bronson explained that

Plaintiff should be expected to have "good" and "bad" days and cautioned that symptoms would likely be exacerbated if he attempted to meet the sustained demands of a competitive work environment. (T at 359, 361).

It is well-settled that a claimant "need not be an invalid to be found disabled" and should not be punished for exerting the effort to attend to basic necessities of life. *See Balsamo v. Chater*, 142 F.3d 75, 81-82 (2d Cir. 1998); *see also Molina v. Colvin*, 13-CV-4989, 2014 U.S. Dist. LEXIS 95998, 2014 WL 3445335, at *15 (S.D.N.Y. July 15, 2014) ("There is a big difference[] between an occasional walk or shopping trip and sitting/standing for an eight hour workday"); *Woodford v. Apfel*, 93 F. Supp.2d 521, 529 (S.D.N.Y. 2000) (explaining that a claimant's performance of basic self-care activities does not contradict assertions of disability).

Lastly, Plaintiff has an extensive work history, including significant annual earnings and the performance of demanding work as a police officer and firefighter. (T at 191-98, 208). The ALJ erred by failing to give enhanced consideration to Plaintiff's credibility given this history. *See Rivera v. Schweiker*, 717 F.2d 719, 725 (2d Cir.1983) ("A claimant with a good work record is entitled to substantial credibility when claiming an inability to work because of a disability."); *Bialek v. Astrue*, No. 11-CV-5220

FB, 2013 WL 316165, at *4 (E.D.N.Y. Jan. 28, 2013)("The ALJ should have afforded Bialek 'substantial credibility' in light of his 17–year work history as an emergency medical technician."); *Hughes v. Colvin*, No. 15-CV-181S, 2017 WL 1088259, at *6 (W.D.N.Y. Mar. 23, 2017)(noting that "a claimant with an established history of employment is unlikely to be 'feigning disability'")(citation omitted)(collecting cases).

   C.   *Remand*

   A court reviewing the denial of benefits may, in its discretion, remand a claim for further proceedings, or solely for the calculation of benefits. 42 U.S.C. § 405(g) (sentence four) (a reviewing court may enter, upon the pleadings and the administrative record, "a judgment affirming, modifying, or reversing the decision of the Commissioner ... with or without remanding the cause for a rehearing").

   Where the record is complete and contains persuasive proof of disability, "no purpose would be served" by additional administrative proceedings and remand for calculation of benefits is warranted.  *Curry v. Apfel*, 209 F.3d 117, 124 (2d Cir.2000).

   Here, the record is extensive, complete, and contains persuasive proof of disabling pain and limitation, including the well-supported assessment of Plaintiff's treating orthopedic surgeon and the testimony of a

claimant with an extensive work history.  The Commissioner does not

articulate any purpose that would be served by further administrative

proceedings and this Court finds none.

### IV.  CONCLUSION

For the foregoing reasons, Plaintiff is GRANTED judgment on the

pleadings and this matter is REMANDED for calculation of benefits. The

Clerk is directed to enter final judgment and then close the file.


Dated: March 27, 2023          *s/Gary R. Jones*
                               GARY R. JONES
                               United States Magistrate Judge